[Crim No. 4732. First Dist., Div. Two. Apr. 19, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. MARVIN RAY GILES, Defendant and Appellant.

Peter Schwarz, under appointment by the District Court of Appeal, and Ronald Watts for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., and Clifton R. Jeffers, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant's sole contention on appeal is that the marijuana which he was convicted of possessing was obtained by a search of his person incident to an unlawful arrest and was therefore inadmissible in evidence. (*People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].)

Appellant's status as a state paroled prisoner is relevant to a determination of this contention. He had been convicted of robbery, pursuant to which he had served a term in a California state prison, and was on parole from such conviction at the time of the events related below.

Appellant had failed to report to his parole officer, who had been looking for him without success and who had asked the Oakland Police Department to arrest him as a parole violator.

With this background, we approach the events of February 7, 1964. On that day two liquor stores on MacArthur Boulevard were robbed at gunpoint. Inspectors Prince and Ramos of the Oakland Police Department found a witness who saw appellant run from the rear of a building near the scene and at the time of one of the holdups. The witness knew appellant because he had previously lived in the apartment house which the witness managed. Appellant jumped into a Chrysler made car which was then driven away rapidly by another man who had a beard.

Inspector Prince radioed police headquarters to get more information on appellant. He ascertained that appellant was on parole, that his parole officer wanted him apprehended as a parole violator, and that appellant and one Robert Waldo had been charged with possession of narcotics and had been stopped with guns in their car.

The inspectors learned through appellant's relatives that he might be living in a house on MacArthur Boulevard with a man named "Larry," who had a beard and owned a Chrysler automobile, and that Waldo also stayed there at times.

When no one answered their knocks at this house, the inspectors entered by slipping the screen door latch with a screwdriver and then unlocking the door itself with a key furnished by the real estate agent who had charge of renting the property. They found appellant standing in the middle of the dining room.

Inspector Prince told him that he was under arrest and searched him, finding a vial containing marijuana in his front pocket. The arrest and search were warrantless.

Inspector Prince did not tell appellant at the time of the arrest what he was being arrested for. The police were, of course, mainly interested in investigating the robberies and appellant was booked for "investigation of robbery." However, the decisive issue here is whether appellant was lawfully in custody at the time he was searched by Inspector Prince.

Appellant did not testify at the (nonjury) trial or make any effort to controvert any of the foregoing facts. The recording of an oral statement made by appellant to the police was played back to the court during the trial. By stipulation the statement was not transcribed and we have no indication as to what was said therein.

Appellant makes no claim that the search of his person was not incident to the arrest or that the parole officer acted arbitrarily or without reasonable cause in requesting that he be apprehended as a parole violator.

The right of a paroled prisoner to avail himself of the exclusionary rule established by *People* v. *Cahan, supra,* has been considered in a number of decisions.

In *People* v. *Denne,* 141 Cal.App.2d 499 [297 P.2d 451], the court upheld the evidentiary use of marijuana discovered by a parole officer who had gone to the defendant's apartment to take him into custody as a parole violator and had entered and searched the apartment in his absence.

Speaking for the court, Mr. Justice Fox said: "The situation in the instant matter differs significantly from that involved in the *Cahan* case, and all others decided since the adoption of the exclusionary rule, since the problem confronting the court in those cases was either the propriety of the arrest of a *private person,* with which the complained of search and seizure was conjoined, or whether the search

incidental to the arrest of the private individual was reasonable. . . . The vital distinction here is that on the occasion of the search defendant was not an ordinary individual merely suspected of a crime but a convict on parole. A prisoner released on parole is not a free man. . . . The granting of parole does not change his status as a prisoner. The parolee is not discharged but merely serves the remainder of his sentence outside rather than within the prison walls. . . . It is unnecessary for a parole officer to apply for a warrant to 'arrest' a parolee who is already his prisoner and who is at all times *in custodia legis.* The administration of the parole system must be realistic, and not strangled in technical niceties. A parole officer's physical apprehension of his prisoner for suspected violation of parole is not an 'arrest' in the sense that a peace officer arrests a private individual suspected of a crime but a mere transfer of the subject from constructive custody into actual or physical custody.'' (141 Cal.App.2d at pp. 507-510.)

■ When a parole officer seeks to apprehend a parole violator, he may be accompanied by police officers and a search incident to the arrest may be made by them.

In *People* v. *Contreras,* 154 Cal.App.2d 321 [315 P.2d 916], defendant's parole officer went to his apartment for the purpose of arresting him as a parole violator. Three state narcotic agents accompanied him. They broke open the door after no one responded to their knocks and found defendant inside. One of the agents discovered heroin at the foot of a bed. It was held that the search by the agent was not unlawful and that the evidence discovered by him was admissible in a prosecution against defendant for its possession.

In *People* v. *Hernandez,* 229 Cal.App.2d 143 [40 Cal.Rptr. 100], a warrantless search of defendant's car was made by his parole officer, who was accompanied by four narcotic agents. A quantity of heroin was found in the car. On appeal from the judgment convicting him of its possession, defendant contended that the heroin was uncovered as the result of an unreasonable search and seizure, hence was inadmissible in proof of guilt. This contention was rejected.

Mr. Justice Friedman, speaking for the court, reviews the legal status of a parolee and concludes as follows: ''We conclude that the requirement of reasonable or probable cause does not apply to search of a paroled prisoner when conducted by his parole supervisors.'' (P. 195.)

In *Contreras* and *Hernandez* the parole officer was present

at the search. In the instant case he was not. In *Contreras* the search was made by a narcotic agent. In *Hernandez* it was made by the parole officer himself.

Here the parole officer had authorized and requested the apprehension and arrest of defendant as a parole violator. His physical presence at the scene of the arrest was not necessary to the carrying out of such request. To impose such a requirement upon the apprehension and detention of parole violators would be to place an unreasonably heavy burden upon the parole administration.

The defendant herein is in the same legal position as the defendant in *People* v. *Hernandez, supra,* where it is stated: ''These standard concepts of arrest and probable cause for arrest have little relevance as between correctional authorities and paroled prisoners. The parolee, although physically outside the walls, is still a prisoner; his apprehension, although outwardly resembling arrest, is simply a return to physical custody. (*People* v. *Denne, supra,* 141 Cal.App.2d at p. 510.) To weigh retaking of a parolee on scales calibrated for standard cases of arrest and probable cause is to compare incomparables. The decisive question in this case is not whether the parole officer had probable cause for an arrest and incidental search, but *whether his paroled prisoner could invoke constitutional barriers against the search.*'' (Italics added.)

The instant case is factually distinguishable from *People* v. *Gallegos,* 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174]. There the police officers accosted the defendant as he was unlocking the door to his apartment. The arresting officer testified that defendant, among other things, stated that he was at that time currently on parole for a narcotic offense. Defendant testified that he was not on parole and had not stated that he was. There was nothing else in the record to indicate that defendant was in fact on parole.

The majority opinion states: ''Although under ordinary circumstances a parolee's place of residence may be searched prior to an arrest [citations], in the instant case the status of the defendant as a parolee was not relied upon by the arresting officer. Hence, *lacking evidence in this regard,* the search of defendant's premises which immediately followed the arrest, and the results thereof, could not be utilized in justification of the arrest.'' (Italics added.)

In the instant case the arresting officer knew before he went to the premises on MacArthur Boulevard that defend-

ant was on parole, that he had violated his parole, and that his parole officer was seeking him and had asked for the assistance of the Oakland Police Department in apprehending him. *There is no denial of these facts.*

We think it is reasonable to conclude that the arresting officer relied upon these facts as well as the other facts discovered in his investigation, in making the arrest of defendant.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 16, 1965. Peters, J., was of the opinion that the petition should be granted.